**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANDRÉ FELIPE BUSTAMANTE,
d/b/a 500 ENTERTAINMENT,

Plaintiff,

v.

ORCHARD ENTERPRISES NY, INC.,

Defendant.

**Case No. ____________**

**COMPLAINT**

**(Breach of Contract; Declaratory Relief; Accounting)**

## COMPLAINT

Plaintiff André Felipe Bustamante, d/b/a 500 Entertainment ("Plaintiff"), proceeding without counsel, for his Complaint against Defendant Orchard Enterprises NY, Inc. ("Orchard" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

**1.** This is an action arising from a written global music distribution agreement between Plaintiff and Orchard and a subsequent written termination agreement. The agreements required Orchard to account for and pay royalties from digital exploitation of Plaintiff's recordings and, after termination, expressly preserved Orchard's continuing obligation to account for and pay royalties on monies actually received from digital service providers ("DSPs").

**2.** Orchard thereafter placed and maintained a hold on Plaintiff's account and, in writing, stated that it was retaining "any and all" money in the account because of third-party disputes. Orchard later confirmed in 2026 that the account remained on hold because of disputes, even after Orchard's separate tax-information issue had been cured.

**3.** Orchard's own accounting interface for Account 73393, covering November 2022 through August 2026, displays gross revenue of $149,072.08 and net revenue of $109,729.50. The same interface identifies among the account's leading revenue-producing products recordings that Orchard itself had identified as the subject of third-party disputes. Plaintiff does not allege that every dollar displayed as net revenue is necessarily presently due to Plaintiff; rather, the figures demonstrate the existence of substantial revenue requiring a complete contractual reconciliation.

**4.** Plaintiff seeks recovery of the unpaid and improperly withheld amounts that are due under the agreements, an accounting identifying all receipts, deductions, reserves, holds and payments, and declaratory relief concerning the scope of Orchard's contractual right to withhold payments in response to third-party claims.

## PARTIES

**5.** Plaintiff André Felipe Bustamante is an individual domiciled in Colombia and is the person identified in the agreements as both the "Company" operating as 500 Entertainment and the "Principal." Plaintiff's contact information is set forth in the signature block below.

**6.** Defendant Orchard Enterprises NY, Inc. is a New York corporation with its principal office at 23 East 4th Street, 3rd Floor, New York, New York 10003. Orchard was the counterparty to the agreements described below. The agreement itself identifies Orchard at that New York address.

## JURISDICTION AND VENUE

**7.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen of a foreign state and Defendant is a citizen of the State of New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**8.** The amount in controversy exceeds $75,000 because Orchard's own accounting interface for Account 73393 reports $109,729.50 in net revenue for the displayed November 2022-August 2026 period, while Orchard has acknowledged that funds have been held and Plaintiff has not received a complete reconciliation establishing what amounts were paid, reserved, withheld, or otherwise remain due. Plaintiff seeks only those sums that are ultimately established as contractually payable, together with applicable interest and other relief.

**9.** Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and because the events and omissions giving rise to the claims occurred in this District. Venue is also expressly and contractually appropriate here under the parties' written agreements.

**10.** The October 17, 2024 Termination Agreement provides that it is governed by New York law and that the parties grant exclusive jurisdiction to the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York, New York County, over disputes arising out of or relating to the Termination Agreement.

## THE 2022 GLOBAL DISTRIBUTION AGREEMENT

**11.** On or about October 14, 2022, Plaintiff and Orchard entered into a Global Distribution Agreement (the "Distribution Agreement"), under which Orchard was appointed as the exclusive worldwide digital distributor of Plaintiff's recordings during the contract term.

**12.** The Distribution Agreement required Orchard to pay Plaintiff 75% of gross receipts actually received by Orchard from digital distribution, subject to specified contractual deductions. The agreement separately established accounting and payment procedures on a quarterly basis, generally 45 days after the end of the quarter in which the applicable amounts were received by Orchard.

**13.** The Distribution Agreement also provided Plaintiff with audit rights over Orchard's books and records for purposes of verifying payments.

**14.** The Distribution Agreement addressed third-party claims. In substance, it authorized Orchard to take down content that became subject to a claim and to withhold payments only in an amount reasonably related to the claim and potential associated expenses.

**15.** The Distribution Agreement further required Plaintiff to notify Orchard if Plaintiff no longer had necessary rights to a recording or if a property became subject to a third-party claim that reasonably risked exposing Plaintiff or Orchard to liability.

## 2024 THIRD-PARTY CLAIMS AND ORCHARD'S INVOLVEMENT

**16.** Beginning in June 2024, Orchard communicated to Plaintiff multiple third-party claims involving recordings distributed through Account 73393, including claims concerning "Thug Popstar" by Lil Mosey, "Gata Only (Remix)" by FloyMenor, and "Slow Wine Mixtape" by Bad Gyal.

**17.** In the "Thug Popstar" matter, Orchard transmitted an Apple/Cinq Music claim, identified the release and UPC, requested Plaintiff's position, and later communicated that outside counsel for Cinq Music demanded documentation supporting Plaintiff's claimed rights and warned of a potential worldwide takedown.

**18.** In the "Gata Only (Remix)" matter, UnitedMasters communicated to Plaintiff and/or the relevant Orchard claims personnel that the release was unauthorized worldwide and identified The Orchard / André Felipe Bustamante d/b/a 500 Entertainment as the content provider. UnitedMasters also stated that it had been referred to Plaintiff by Ben Wexler of The Orchard and subsequently followed up directly with Plaintiff's client.

**19.** Plaintiff and his legal team responded to the claims, including by asserting contractual and distribution rights and identifying supporting agreements. These communications establish that Orchard had direct knowledge of the disputes, the competing claims, and Plaintiff's position concerning the disputed recordings.

20. Plaintiff does not ask this Court in this action to adjudicate every underlying third-party copyright or master-ownership dispute as between Plaintiff and the third parties. The present action concerns Orchard's contractual accounting, payment and withholding obligations.

## TERMINATION AND SURVIVING PAYMENT OBLIGATIONS

**21.** On October 17, 2024, Plaintiff and Orchard executed a written Termination Agreement. The parties agreed to terminate the Distribution Agreement as of the final day of the month in which the Termination Agreement was fully executed.

**22.** The Termination Agreement required Orchard to notify DSPs to delete or take down the recordings, while also providing that Plaintiff would continue to receive accountings and payments under the Distribution Agreement so that residual monies actually received by Orchard from DSPs could be properly accounted for.

**23.** The Termination Agreement further states that termination would not affect Orchard's obligation to account and pay royalties under the Distribution Agreement with respect to earnings on Plaintiff's recordings that Orchard actually received.

**24.** The Termination Agreement contains a broad release in Article 3, but expressly excepts obligations preserved by Article 4. Plaintiff therefore limits this action to obligations and amounts preserved after termination, including post-termination monies actually received by

Orchard and continuing accounting and payment obligations, and does not seek to revive claims that are expressly released by Article 3.

## ORCHARD'S 2025 HOLD

**25.** On April 21, 2025, Isaac Guerrero, Orchard's Country Manager for the Andean Region, wrote to Plaintiff regarding payments to Plaintiff's label.

**26.** In that communication, Orchard identified ongoing legal disputes involving, among other recordings, Jordan Adentuji - Kehlani, FloyMenor - Gata Only, Uzielito Mix - Linea del Perreo, Ankhal - Trap Island, Bad Gyal - Slow Wine Mixtape, Lees y Feer - Y Que No y Que Tal, and Yailin La Más Viral - Quiero Darte.

**27.** Orchard then stated, in substance, that under the contract it had the right to retain "any and all" money in the account until the disputes were resolved.

**28.** Orchard did not, in the communication presently available to Plaintiff, provide a claim-by-claim reconciliation identifying the specific amount withheld for each claim, the associated expenses supporting each reserve, or the amount of unrelated funds that remained available for payment.

## 2026 ACCOUNTING RECORDS AND CONTINUING HOLD

**29.** In September 2026, Plaintiff formally requested release and payment of outstanding royalties and historical statements for specified UPCs, including titles previously identified in Orchard's 2025 hold notice. Plaintiff requested confirmation of the current royalty status, whether funds were available for release, and the payment method.

**30.** Orchard initially responded that the account was subject to a hold because tax information had not been provided. Plaintiff supplied the requested tax documentation.

**31.** Orchard's Finance Support subsequently confirmed that the tax form was approved and that the account had been updated.

32. As of October 6, 2026, the royalty and statement dispute remained unresolved. Plaintiff had separately received communications from Orchard attributing holds or non-payment to disputes involving the account, after the tax-information issue had been addressed.

33. Orchard had therefore been placed on repeated written notice that Plaintiff was seeking historical statements, an accounting of the amounts actually received, and payment of amounts claimed to remain outstanding.

**34.** Orchard's own accounting dashboard for Account 73393 displays a statement period of November 2022 through August 2026, gross revenue since November 2022 of $149,072.08, and net revenue of $109,729.50. The dashboard also shows that the account continued to generate revenue in August 2026.

**35.** The dashboard identifies among the top products the same recordings that Orchard had previously identified as disputed. The visible net-revenue figures for seven such recordings total approximately $108,488.89, subject to verification against the underlying statement data. Plaintiff does not allege that this figure alone is the amount due; rather, it demonstrates that

substantial revenue connected to disputed titles is being recorded within the account and requires reconciliation.

Plaintiff does not seek to revive claims expressly released by the Termination Agreement or claims that are barred by any applicable contractual limitation period. Historical statements and records are requested only to the extent necessary to identify and calculate presently actionable amounts, including amounts actually received by Orchard after termination and obligations preserved by the Termination Agreement.

**36.** Because Orchard has not provided Plaintiff with a complete claim-by-claim reserve calculation and payment reconciliation, Plaintiff cannot presently state the exact amount of each unpaid or improperly withheld royalty item without discovery and a full accounting. Plaintiff therefore seeks an accounting and recovery of all amounts shown to be due.

## COUNT I - BREACH OF THE GLOBAL DISTRIBUTION AGREEMENT

**37.** Plaintiff repeats and incorporates Paragraphs 1 through 36 as though fully set forth herein.

**38.** The Distribution Agreement is a valid and enforceable contract between Plaintiff and Orchard.

**39.** Plaintiff performed, or substantially performed, his obligations under the Distribution Agreement and, after termination, remained entitled to the surviving payment and accounting obligations preserved by the Termination Agreement.

**40.** Orchard breached the Distribution Agreement by, among other things, failing to timely account for and/or pay amounts actually received that were contractually payable to Plaintiff; failing to provide a complete accounting sufficient to identify all receipts, deductions, reserves and payments; and withholding amounts beyond those reasonably related to specific claims and associated expenses, to the extent the evidence establishes such excess withholding.

**41.** As a direct and proximate result of Orchard's breaches, Plaintiff has suffered monetary damages in an amount to be established through accounting and discovery, presently believed to exceed $75,000 exclusive of interest and costs.

## COUNT II - BREACH OF THE TERMINATION AGREEMENT

**42.** Plaintiff repeats and incorporates Paragraphs 1 through 41 as though fully set forth herein.

**43.** The Termination Agreement is a valid and enforceable contract between Plaintiff and Orchard.

**44.** The Termination Agreement expressly preserved Orchard's obligation to account for and pay royalties on earnings from Plaintiff's recordings that Orchard actually received after termination.

**45.** Orchard breached the Termination Agreement by failing to fully perform those surviving accounting and payment obligations and by maintaining a hold on Plaintiff's account without providing a sufficient reconciliation showing the contractual basis and amount of each reserve and the amounts, if any, that were not reasonably related to the identified claims and associated expenses.

**46.** As a direct and proximate result of Orchard's breach, Plaintiff has suffered monetary damages in an amount to be determined after accounting and discovery.

## COUNT III - DECLARATORY RELIEF AND ACCOUNTING

**47.** Plaintiff repeats and incorporates Paragraphs 1 through 46 as though fully set forth herein.

**48.** An actual and justiciable controversy exists concerning the parties' rights and obligations under the Distribution Agreement and Termination Agreement, including the scope of Orchard's right to withhold payments in response to third-party claims and the amount of royalties Orchard must account for and pay.

**49.** Plaintiff is entitled to a judicial declaration that: (a) Orchard remains obligated to account for and pay royalties on earnings actually received from Plaintiff's recordings to the extent those obligations were preserved by the Termination Agreement; (b) any withholding exercised under the third-party-claim provision must be limited to the amount reasonably related to the particular claim and associated expenses; and (c) Orchard must account for all receipts, deductions, reserves, holds, adjustments and payments affecting Account 73393.

**50.** An accounting is necessary because the relevant payment records, DSP-level receipts, deductions, reserves, claim allocations, and internal account records are primarily within Orchard's possession or control, and Plaintiff cannot determine the full amount owed without those records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

- A. Awarding Plaintiff the unpaid and improperly withheld royalties and other amounts due under the agreements, in an amount to be proven at trial or established through accounting, presently believed to exceed $75,000, exclusive of interest and costs;
- B. Ordering Defendant to provide a full accounting of Account 73393, including all gross receipts, net receipts, distribution fees, taxes, other deductions, reserves, holds, third-party-claim allocations, adjustments, payments to Plaintiff, and current balances, for the relevant period preserved by the agreements and applicable law;
- C. Declaring the contractual rights and obligations of the parties concerning post-termination royalties and the scope of any permissible withholding under the third-party-claim provisions;
- D. Awarding prejudgment and post-judgment interest to the extent permitted by applicable law;
- E. Awarding Plaintiff recoverable costs and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL

Plaintiff does not demand a jury trial and requests a bench trial to the extent a trial is required.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

## EXHIBITS

Plaintiff intends to file and rely upon the following exhibits, subject to the Court's rules concerning attachments and admissibility:

- Exhibit A - Global Distribution Agreement dated October 14, 2022.
- Exhibit B - Termination Agreement dated October 17, 2024.
- Exhibit C - Orchard correspondence dated April 21, 2025 concerning the hold on Account 73393.
- Exhibit D - Selected 2024 third-party claim correspondence, including Thug Popstar, Gata Only (Remix), and Slow Wine Mixtape.
- Exhibit E - September-October 2026 Orchard correspondence concerning the tax-information hold, tax-form approval, account status, and requests for statements and payment.

Exhibit F - October 6, 2026 Plaintiff notice demanding resolution, historical statements, accounting and payment.

- Exhibit G - Screenshots of Orchard's Workstation dashboard for Account 73393 showing the November 2022-August 2026 period, revenue, transaction types, top products and territories.

## SIGNATURE

Dated: October 8, 2026

Firmado por:

Respectfully submitted,

Inicial

/s/ André Felipe Bustamante
CC4C00E55A5547A...

ANDRÉ FELIPE BUSTAMANTE
d/b/a 500 ENTERTAINMENT
Pro Se Plaintiff
Calle 18c Carrera 25 #113
Ciénaga, Magdalena, Colombia
Email: soyacosta99@gmail.com
Telephone: 302-646-2744